PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. COMMISSIONER OF INTERNAL REVENUE.

No. 5535.

Circuit Court of Appeals, Third Circuit.
Feb. 5, 1935.

Walter Biddle Saul, of Philadelphia, Pa., for petitioner.

Warren F. Wattles, of Washington, D. C., Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., for respondent.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge.

Long prior to 1929, the Bank of North America and Trust Company, hereinafter called the Bank, and The Pennsylvania Company for Insurances on Lives and Granting Annuities, hereinafter called the old Pennsylvania Company, were separately engaged in a general banking, trust and safe-deposit business in Philadelphia. Both were Pennsylvania corporations. On April 25, 1929 the old Pennsylvania Company and the Bank entered into an "Agreement of Consolidation and Merger" within the provisions of section 3 of the Pennsylvania Act of May 3, 1909 (P. L. 1909, p. 408, as amended, P. L. 1915, p. 205, 15 PS Pa. § 423), concerning merger of corporations, in a manner with which we are not presently concerned. That agreement became effective when, on June 1, 1929, the Governor of the Commonwealth of Pennsylvania issued letters patent to the "consolidated corporation" under authority of the cited Act. Then (pursuant to the Act) the merger was "deemed to have taken place and the said corporations to be one corporation under the name adopted" (which was the same as the old Pennsylvania Company), and all the assets, estates, privileges, franchises and rights theretofore vested in each of the constituent corporations were deemed and taken to be transferred to and vested in the "new corporation" without any further act or deed; and all debts, duties and liabilities of each of the constituent corporations became thenceforth attached to and were enforceable against the "new corporation." Thereupon the new Pennsylvania Company took over, and has ever since carried on as its own, the business of its constituent corporations.

The Bank filed an income tax return for the period January 1 to May 31, 1929, being the five months of the taxable year before, on the merger, its "existence ended, so far as being a going, operating entity." Petry v. Harwood Electric Co., 280 Pa. 142, 124 A. 302, 303, 33 A. L. R. 1249. The return disclosed that the Bank had, during that period, sustained a loss for income tax purposes amounting to $120,320.04, and had received interest and dividends amounting to $57,543.49, leaving a statutory net loss of $62,776.55, determined in accordance with the provisions of section 117 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 825, 26 USCA § 2117.

The new Pennsylvania Company filed a tax return for the fiscal year ending November 30, 1929. Conceiving it a right or privilege or an asset which it had acquired through the merger, it deducted from its own gains for the taxable year the net loss

sustained by the Bank for the five months before the merger.

The Commissioner of Internal Revenue refused to allow as a deduction to the new Pennsylvania Company the net loss or any part thereof sustained by the Bank before the merger, and assessed against it a deficiency tax in the amount of $46,307.14 of which $13,327.30 is in controversy. The new Pennsylvania Company appealed to the United States Board of Tax Appeals which, after hearing, sustained the Commissioner. The matter is here on the petition of the new Pennsylvania Company for review.

The question, on these facts, is whether the new corporation, taking over the assets, liabilities and business of two old corporations by merger under state law, may deduct the loss of one of the old corporations from the net gain of the new corporation in computing the latter's taxable income. The answer to this question turns on two matters of law; one, federal law, as to permissible deductions; the other, state law, as to the character of a consolidated corporation.

 Deductions in calculating federal income taxes are not matters of personal right. "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S. Ct. 788, 78 L. Ed. 1348. And further, the right of deduction, when accorded by statute, is available only to the taxpayer who suffered the loss. New Colonial Ice Co. v. Helvering, supra; Busch v. Commissioner (C. C. A.) 50 F.(2d) 800. Whether, in this case, the petitioning taxpayer sustained the loss which it seeks to deduct from its gains depends on its character. If after merger of two corporations, theretofore legal strangers, the consolidated corporation becomes a sort of corporate confederation and retains the corporate characteristics of its constituents, it is conceivable that a loss of one may be deducted from a gain of the other for income tax purposes, as in the case of affiliated corporations. But if the consolidated corporation absorbs the old corporations and becomes a new legal entity, it must pay taxes as such and, in estimating them, is allowed to deduct only its own losses from its own gains. The character of the new corporation—whether a composite of its predecessors or a distinct entity—depends on the law of the state that created it, Chicago Title & Trust Co. v. Doyle, 259 Ill. 489, 102 N. E. 790, 47 L. R. A. (N. S.) 1066, to which we may look for enlightenment. Freuler v. Helvering, 291 U. S. 35, 54 S. Ct. 308, 78 L. Ed. 634; Gottlieb v. White (C. C. A.) 69 F.(2d) 792; Id., 292 U. S. 657, 54 S. Ct. 867, 78 L. Ed. 1505; Continental Ins. Co. v. Reading Co. (Continental Ins. Co. v. United States), 259 U. S. 156, 176, 177, 42 S. Ct. 540, 66 L. Ed. 871.

 It is clear from reading the Pennsylvania Act (whose substance we have given) that the legislature intended that by a merger or consolidation of several Pennsylvania corporations the result shall be a "new corporation," which, according to judicial interpretation by courts of that state, is "an entity entirely distinct from that of its constituents. It draws its life from the act of consolidation." Pennsylvania Utilities Co. v. Public Service Commission, 69 Pa. Super. 612; Continental Ins. Co. v. Reading Co. (Continental Ins. Co. v. United States), 259 U. S. 156, 176, 177, 42 S. Ct. 540, 66 L. Ed. 871. "Upon consolidation thereunder the constituent companies are deemed dissolved. * * * 'From the time of the completion of said merger the constituent companies cease to exist,' they have no legal identity or corporate existence." Pennsylvania Utilities Co. v. Public Service Commission, supra; Petry v. Harwood Electric Co., 280 Pa. 142, 124 A. 302, 33 A. L. R. 1249. Thus it would seem on this plain judicial interpretation of Pennsylvania statutory law that the petitioning consolidated corporation (the new Pennsylvania Company) is the "taxpayer," separate and distinct from its predecessors, and that, like any other taxpayer, it can deduct only its own losses from its own gains in computing its income taxes, and that the Commissioner and the Board of Tax Appeals were right in disallowing a deduction of losses of one constituent corporation from gains of the consolidated corporation, unless there is countervailing substance in the petitioning taxpayer's argument that its case (for two reasons) falls outside the statute as framed and interpreted.

Its first reason is that in questions of individual rights and contracts and in cases to prevent injustice arising as a result of a merger, courts invoke a legal fiction that the merged corporation has a distinct and separate entity from the corporations which have been consolidated, but that the fiction is not invoked in construing or applying tax

laws, in respect to which courts will not be blinded by mere matters of form but, "regardless of fictions, will deal with the substance of the transaction involved * * *." Chicago, M. & St. P. Railway Co. v. Minneapolis Civic & Commerce Association, 247 U. S. 490, 501, 38 S. Ct. 553, 557, 62 L. Ed. 1229; Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Western Maryland Railway Co. v. Commissioner (C. C. A.) 33 F.(2d) 695, 698. We have not been persuaded, in view of what the Pennsylvania Merger Act itself says and what the courts of Pennsylvania have said in interpreting the Act, that any fiction is involved. They state as a legal fact that the consolidated corporation is a new corporation and a separate entity. It is therefore a separate taxpayer. Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142. Being such, it cannot avail itself of losses of its constituents as a means of reducing its own tax obligations, unless there is something in the petitioner's next contention, which is, that the loss of $120,-246.34 sustained by the Bank was a "right" or "asset" of that company which passed by operation of the cited Pennsylvania Merger Act to the new Pennsylvania Company upon the consolidation and merger, and that the right or asset then being its property, the new Pennsylvania Company could exercise or use it in determining its own taxable gains. The practical effect of this contention is that the new Pennsylvania Company, the taxpayer, should be allowed to receive income in the amount of the Bank's loss before it became liable for payment of federal income taxes. This contention has several infirmities. If the loss to the Bank is viewed as a "right," it was right of the Bank to be exercised by it in deduction from its own gains and reduction of its own taxes. The right of deduction of losses, being personal to that taxpayer [the one which sustained it, Planters' Cotton Oil Co. v. Hopkins (C. C. A.) 53 F.(2d) 825, 826; Id., 286 U. S. 332, 52 S. Ct. 509, 76 L. Ed. 1135] can not be transferred to another taxpayer.

The idea that a loss is an "asset" is a little hard to grasp. That a loss of one corporation becomes, on merger, an asset of another corporation is something of an anomaly. Yet we can see, as a matter of dollars and cents, that if a consolidated corporation may use the ante-merger losses of its constituents in reduction of its own taxable gains, it thereby profits to the extent of its own gains and, correspondingly, its own taxes are reduced. But the trouble with this proposition is that the right or asset is that of the taxpayer (in this case the Bank) to be exercised or used (as probably it was exercised or used in whole or in part) by the taxpayer that had sustained the loss. No section of the taxing act, whence alone authority for deduction of losses must be sought, authorizes the transfer of losses from one taxpayer to another for use by the latter as a deduction for income tax, purposes. Compare Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128.

Finally, the taxpayer, the new Pennsylvania Company, complains of inequity in the government's refusal to allow it a deduction of the Bank's loss sustained by that constituent before merger and its acceptance of taxes on gains of the old Pennsylvania Company, another constituent, for the part of the taxable year before merger. There are several answers to this point, which are, that the new Pennsylvania Company voluntarily made a return for the whole taxable year ending November 30, 1929, which embraced the last six months of the life of the old company and the first six months of the life of the new; that it did not disclose either gains or losses of one company or the other particularly for one period or the other on which the Commissioner could have split the tax had he desired to do so. Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991; Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385; Saxman Coal & Coke Co. v. Commissioner, 43 F.(2d) 556 (C. C. A. 3rd); and that, though the issue was not raised before the Commissioner or the Board, the taxpayer, the new Pennsylvania Company, knowing it was liable under the Pennsylvania Merger Act for all obligations of its constituent, the old Pennsylvania Company, may have regarded the obligation of the old company to pay federal taxes as one of the obligations which it, the new company, had assumed on the merger and, accordingly, covered its income in its own return and paid the tax.

The order of the Board is affirmed.