The Weber Flour Mills Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 60102.   Promulgated February 28, 1935.

*Perry W. Shrader, Esq.*, for the petitioner.
*James K. Polk, Jr., Esq.*, for the respondent.

OPINION.

TURNER: The only question for determination is whether the Weber Flour Mills Co., which was incorporated August 7, 1924, has had a continuous existence as a definite and distinct taxable entity and is the " taxpayer " we now have before us as the petitioner in this proceeding. If so, the respondent concedes that the petitioner sustained a net loss in the operation of its business, which is deductible under the provisions of section 117 (b)[1] of the Revenue Act of 1928 in determining its net income for the taxable year.

The respondent, in his determination, has attributed full force and effect to every event and happening which could in any way affect the existence of the Weber Flour Mills Co. as originally incorporated, and contends that by reason of the forfeiture of its charter in the manner prescribed by the Kansas statute, the predecessor corporation passed completely out of existence; that during the interval from the date of forfeiture, on December 13, 1926, to the date the petitioner received its charter, on May 18, 1928, the business, even though operated in the manner of a corporation, could have been nothing more than a trust or an association, and under the decision of the United States Supreme Court in *Planters Cotton Oil Co.* v. *Hopkins*, 286 U. S. 332, a net loss sustained by an association is not to be recognized, under section 117 (b), *supra*, as the net loss of a successor corporation, even though such successor corporation acquires the business and assets of the association without any change whatever. The respondent also cited *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, and *New Colonial Ice Co.* v. *Commissioner*, 66 Fed. (2d) 480, since affirmed by the United States Supreme Court in 292 U. S. 435.

The petitioner has pointed out the distinctions between the facts in this case and the facts involved in *Woolford Realty Co.* v. *Rose*, *supra*, and *New Colonial Ice Co.* v. *Commissioner*, *supra*, and claims that, since there was no change in the business carried on by the

[1] SEC. 117 (b). *Net loss as a deduction.*—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called " second year "), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called " third year ") ; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

predecessor corporation when taken over by the petitioner and the stockholders' powers and the applicable state statutes remained the same, and inasmuch as the loss of its charter by the predecessor corporation was inadvertent and not by reason of any intention on the part of the corporation or its stockholders to make a change in the corporate organization or business, the net losses sustained in the years 1927 and 1928 should be treated as the net losses of the petitioner.

A corporation is a fictitious entity, dependent for existence upon the laws of the state of its origin, and we must examine the Kansas statutes to determine whether the Weber Flour Mills Co. that sustained the net loss is the Weber Flour Mills Co. now claiming the right to deduct such net loss in computing its net income. Forfeiture of a corporate charter is provided for in section 706, chapter 17, Revised Statutes of Kansas, 1923, which reads in part as follows:

The failure of any domestic corporation to file the annual statement and to pay the annual fee herein provided for within ninety days of the time for filing and paying the same shall, in addition to other penalties, work the forfeiture of the charter of such corporation organized under the laws of this state and the charter board may at any time thereafter declare the charter of such corporation forfeited.

The Supreme Court of Kansas has construed the provision quoted in *Four-S Razor Co.* v. *Guymon*, 205 Pac. 635, and *Young Construction Co.* v. *Dunne*, 254 Pac. 323. In the earlier case the charter board had declared a forfeiture of the charter of the Four-S Razor Co. for failure to make the required report and pay the specified fees. It was insisted on behalf of the corporation that this failure on its part did not " *ipso facto* work a forfeiture of its charter rights ", but that these omissions were merely grounds for forfeiture and that the existence of such grounds did not terminate corporate life. The court said:

It is competent for the Legislature which provided for the creation of corporations to also provide that particular omissions or acts should operate to end their existence, and to make these provisions self-executing * * *. The plaintiff organized under the general laws of the state, and it accepted the privileges granted upon the conditions prescribed by the Legislature, one of which was that its existence might be terminated by the omissions mentioned. It owes its existence to the state, and the sovereign power that created it may prescribe the circumstances which will operate as a forfeiture of the granted rights. * * *

The language of the act clearly evinces the legislative intention to be that a forfeiture may be declared and enforced without resort to the courts. The act prescribes that certain omissions and defaults shall work a forfeiture, and for these the state charter board may declare the forfeiture. That board is thereby given authority to determine the existence of the grounds, and, if found to exist, to terminate the life of the corporation by a declaration of forfeiture.

Later, in *Young Construction Co.* v. *Dunne, supra,* the court was equally positive, and with reference to the question as to whether or not it was essential that a corporation receive notice of its delinquencies, it was said:

Plaintiff needed no more notice than the statute afforded. It is not necessary to cite authorities to support the doctrine that every one is presumed to know the law and to take notice of the provisions of a general act. Plaintiff was charged with notice of the statute quoted in relation to forfeiture of corporate charters, and was bound to know that if the fees were not paid and the annual report made within 90 days after the time for filing the same * * * the state charter board was authorized to declare the forfeiture at any time after that date.

Referring to its decision in *Four-S Razor Co.* v. *Guymon, supra,* the court made the following statement:

And it was further declared that the failure to make annual statements and pay a prescribed fee shall operate as a forfeiture of its charter, and when the declaration is made as the statute provides, the existence of the corporation is ended.

The stipulated facts show that the petitioner's predecessor did fail to make a report and pay the annual fees and that forfeiture of its charter was declared by the charter board on December 13, 1926. Under the laws of Kansas, as construed by the Supreme Court of Kansas, the existence of that corporation came to an end on the happenings of these events.

The petitioner stresses very strongly, however, the fact that it is a corporation formed under the same statutes as its predecessor with the same business, the same powers, and the same stockholders, and urges that it should be regarded as a continuation of such predecessor corporation, entitled to be termed the " taxpayer " within the meaning of section 117 (b), *supra.*

Such a conclusion might readily be reached if, under the Kansas statutes, a revival of the predecessor corporation had been possible at the time the petitioner was organized and the predecessor corporation had been revived. See *Calvin Zimmerman,* 31 B. T. A. 754. In section 224, chapter 17, Revised Statutes of Kansas, 1923, provision was made for reinstatement of a charter inadvertently lost in the manner set forth in this case, but it was further provided that the application for such reinstatement must be made within six months of the forfeiture and cancellation. According to the stipulation, no such application was made within the period provided by the statute and there was no revival of the old corporation.

Clearly under the Kansas statutes the petitioner's predecessor corporation passed out of existence on December 13, 1926, and since the time within which it might have been revived had expired prior to the organization of the petitioner, it cannot be said that the petitioner and the predecessor corporation are the same " taxpayer "

within the meaning of section 117 (b), *supra.* From December 13, 1926, to May 18, 1928, the business had no corporate existence, and, with reference to the deduction by the petitioner of a net loss sustained during that period, the decision of the Supreme Court in *Planters Cotton Oil Co.* v. *Hopkins, supra,* is controlling. Cf. *McLaughlin* v. *Purity Investment Co.,* 75 Fed. (2d) 30 (C. C. A., 9th Cir.). *Pennsylvania Co. for Insurances on Lives and Granting Annuities* v. *Commissioner,* 75 Fed. (2d) 719 (C. C. A., 3rd. Cir.).

*Judgment will be entered for the respondent.*